FILED
2020 Aug-24 PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DEMARCUS VIDAL COLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>CORRECTION OFFICER ZACKERY McLEMORE, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:19-cv-00899-LSC-SGC |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 1). The complaint names as defendants the Alabama Department of Corrections and four correctional officers: Zackery McLemore, Joel Binder, Speaks, and Gadson. (*Id.* at 2-3). The plaintiff seeks monetary relief. (*Id.* at 5). As explained in more detail below, the defendants' motion for summary judgment is due to be granted in part and denied in part.

## I. PROCEDURAL HISTORY

On July 22, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 10). The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits

and, if appropriate, the court would treat it as a motion for summary judgment filed pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. (*Id.*).

On November 20, 2019, the defendants filed a special report, supplemented by affidavits and/or other evidence. (Doc. 23). On November 26, 2019, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and ordered the plaintiff to file any response within twenty-one (21) days by filing affidavits or other material. (Doc. 24). The order also advised the plaintiff of the consequences of any default or failure to comply with Rule 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).

On December 5, 2019, the plaintiff filed a motion for leave to conduct additional discovery, which the undersigned granted on January 3, 2020. (Docs. 25, 26). On February 7, 2020, the defendants filed a second special report in compliance with the discovery order. (Doc. 29). On March 3, 2020, the undersigned entered a second order pursuant to *Griffith*, 772 F.2d at 825. (Doc. 30) (citing Docs. 23, 29). The deadline for the plaintiff to respond has expired, and the court has received no response from the plaintiff. Accordingly, this matter is now before the court on the defendants' motion for summary judgment.

## II. STANDARD OF REVIEW

Because the court has construed the defendants' special reports as a motion for summary judgment, Rule 56 governs the resolution of the motion. Under Rule

56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## III. SUMMARY JUDGMENT FACTS

The plaintiff claims that around 10:45 a.m. on April 15, 2019, the individual defendants sprayed him with a chemical agent and slapped, kicked, punched, stomped, dragged, and repeatedly struck him with a baton—all without justification or excuse. (Doc. 1 at 11). The plaintiff further contends the defendants would not allow him to be seen or heard by medical or mental health providers until his injuries healed, approximately a month later. (*Id*.). The plaintiff alleges he still suffers from non-stop head and spine pain and now takes psychiatric medication because of the abuse he suffered. (*Id*. at 5).

The defendants deny the plaintiff's allegations. Speaks attests he did not report to work on the unit until 10:45 a.m. and was not present during the incident. (Doc. 23-6). McLemore and Gadson attest they were feeding inmates in the

plaintiff's unit around 11:00 a.m.; when McLemore opened the plaintiff's cell door, the plaintiff exited the cell with his fists clinched. (Docs. 23-1, 23-2, 23-3). The plaintiff said something to the effect that he wanted a "one on one" with the "white" man or wanted to "catch the [white] one," meaning McLemore. (*Id*.). Gadson and McLemore gave the plaintiff several direct orders to calm down and go back into his cell; the plaintiff refused. (*Id*.).

McLemore attests the plaintiff stated he was going to "beat [McLemore's] a**." (Doc. 23-1). The plaintiff refused to obey McLemore's order to return to his cell, assuming a boxer's stance while moving toward McLemore. (Docs. 23-1, 23-2). In response, McLemore sprayed the plaintiff in the face with a chemical agent. (Docs. 23-1, 23-2, 23-3). According to McLemore, the spray did not deter the plaintiff, who continued to move toward him while "swinging his clenched fists wildly." (Docs. 23-1, 23-2). McLemore delivered "several palm heel strikes" to the plaintiff's facial area in an attempt to create distance between them. (*Id*.). McLemore and Gadson subsequently were able to get the plaintiff to the floor and handcuff his wrists behind his back. (Docs. 23-1. 23-2, 23-3). Gadson and McLemore assisted the plaintiff to his feet and escorted him to the infirmary for decontamination and to complete a body chart. (Docs. 23-1, 23-3). McLemore denies the plaintiff's allegations concerning the incident and contends he knows of no instance on which the plaintiff was denied medical or mental health treatment.

(Doc. 23-1). Binder averred he was present and witnessed these events. (Doc. 23-2).

According to the institutional medical records, at 11:28 a.m. on April 15, 2019, Nurse Pedrigo evaluated the plaintiff in the infirmary and documented his statement that he "opened the door to get [his] tray and got sprayed and beat with sticks." (Doc. 23-4 at 3). Nurse Pedrigo noted "multiple contusions" to the plaintiff's forehead, scratches and a contusion behind his left ear, and a small contusion behind his right ear. (*Id*.). Around 10:00 p.m. on April 15, the plaintiff returned to the infirmary and told "Nurse H"[1] he did not know why he was beaten. (*Id*. at 4). Nurse H observed a bruise to the plaintiff's whole forehead and a bruise on his right shoulder and upper arm. (*Id*.). Nurse H also observed an abrasion to the plaintiff's forehead measuring approximately 9 centimeters, a bruise on the bridge of his nose, and a bruise on his head behind his right ear. (*Id*.).

On May 8, 2019, Dr. Roddam examined the plaintiff, who stated he felt "very discouraged" and was experiencing chest pain after officers hit his chest and face "about a week" prior. (Doc. 23-4 at 5). Dr. Roddam noted the plaintiff had tenderness to his right posterior lateral chest, his "breath sound[ed] present," and he did not have wounds on his face. (*Id*.). Roddam assessed the plaintiff with

[1] Excepting the first letter, Nurse H's signature is illegible.

musculoskeletal pain, ordered a chest x-ray, and prescribed Ibuprofen and Tylenol. (*Id.*).

On May 11, 2019, the plaintiff submitted a sick call request, reporting back pain and his suspicion that his ribs were broken. (Doc. 23-4 at 6). The plaintiff wrote that he had been submitting sick call requests but had not been seen; he complained of memory loss and "seeing bugs that aren't really there" since being struck in the head with a baton. (*Id.*). On May 14, 2019, the plaintiff was evaluated for back pain; he reported back and rib pain at 8 out of 10. (*Id.* at 7). After examination, the nurse reported that the plaintiff's vital signs, including his lungs, were normal. (*Id.*). The nurse instructed the plaintiff on "proper body mechanics." Although the nurse planned to prescribe Ibuprofen for pain, the plaintiff refused, stating he didn't "really need anything for pain . . . and just want[ed] the paper work done." (*Id.*).

On May 24, 2019, Nurse Hardie recorded the plaintiff as stating he did not "want to talk" during an evaluation in which Hardie observed no visible injuries. (Doc. 23-4 at 8). On May 25, 2019, Nurse Smith conducted a chest pain/cardiac evaluation based upon the plaintiff's complaint that, for the preceding six weeks, he felt a "bubble" in his chest when lying down after eating. (*Id.* at 9). Nurse Smith's evaluation revealed normal vital signs; Smith encouraged him to relax and informed him that chest pain is not always serious. (*Id.*). On June 9, 2019, a nurse evaluated

the plaintiff's mental status based on his report of feeling "like bugs [were] crawling on" him. (*Id*. at 10). The plaintiff's vital signs were normal and the nurse referred him to mental health. (*Id*.).

On June 10, 2019, the plaintiff submitted a sick call request complaining of constant back pain and worsening headaches following the incident. (Doc. 23-4 at 12). On June 11, 2019, the plaintiff received another back evaluation. (*Id.* at 11). The nurse observed no gait disturbance or limitation in the plaintiff's movement but referred him to a provider and informed him to return to sick call if his pain persisted. (*Id*.). Sometime in June 2019, Dr. Roddam examined the plaintiff for back pain, which he reported began when police beat him and hit his spine and right posterior chest. (*Id*. at 5). Dr. Roddam explained to the plaintiff that his chest x-ray revealed no fractures or indications of trauma. (*Id*.). Roddam refilled the plaintiff's Tylenol and Ibuprofen prescriptions at the plaintiff's request. (*Id*.).

On July 11, 2019, the plaintiff submitted a sick call mental health request, complaining of dizzy spells and the inability to sleep for more than an hour or two. (Doc. 23-4 at 13). On July 22, 2019, the plaintiff received a mental health evaluation and reported that his psychiatric medication was making him dizzy. (*Id.* at 11). The nurse referred the plaintiff to mental health. (*Id*. at 14).

## IV. ANALYSIS

### A. Sovereign Immunity

A law "suit against the State and its [agencies for monetary damages] is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937)). No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution, which provides that 'the State of Alabama shall never be made a defendant in any court of law or equity.'" *Id.*; *see also*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).[2] Accordingly, the plaintiff's claims against the Alabama Department of Corrections are due to be dismissed.

**B. <u>Excessive Force</u>**

The plaintiff's excessive force claim is governed by the Eighth Amendment and the standards set forth by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The analysis contains both a subjective and an objective component: (1) whether "the officials acted with a sufficiently culpable state of mind;" and (2) whether "the alleged wrongdoing was objectively 'harmful

[2] Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the state itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). It appears the plaintiff does not assert any official capacity claims. (Doc. 1 at 2-3, 5). To the extent any of the claims are aimed at the defendants in their official capacities, they are due to be dismissed.

enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (*quoting Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1994)) (alteration incorporated).

Regarding the subjective component of an excessive force claim, the Supreme Court has explained,"the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

With these concerns in mind, the Supreme Court identified factors to consider when evaluating whether the force used was excessive, including: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id*. at 7; *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

As to the objective component, claims based on *de minimis* uses of physical force by prison guards are not cognizable; rather these claims are limited to force which is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10. "[A]n injury can be 'objectively, sufficiently serious' [to constitute a constitutional violation] only if there is more than *de minimus* injury." *Boxer X*, 437 F.3d at 1111 (citing *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002)). However, the Eleventh Circuit has instructed:

> In determining whether the amount of force used against an inmate was *de minimis*, a court may consider the extent of the injuries suffered by the inmate. *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002). The Supreme Court recently has clarified, however, that the core judicial inquiry is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, [559 U.S. 34, 37] (2010) (*quoting Hudson*, 503 U.S. at 7). The Court explained that injury and force are "only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at [38].

*Hall v. Santa Rosa Corr. Inst.*, 403 F. App'x 479, 481 (11th Cir. 2010).

Here, the plaintiff attests the defendants beat him for exiting his cell to retrieve his lunch tray; the defendants claim they either were not present at the time or that they reasonably responded to plaintiff's extreme aggression toward McLemore and

his refusal to obey direct orders to return to his cell.[3] Even though the defendants dispute the version of events presented by the plaintiff, the court must construe the facts in the light most favorable to the plaintiff and draw all reasonable inferences from those facts in his favor at this stage of the proceedings. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Hall v. Bennett*, 447 F. App'x 921, 924 (11th Cir. 2011) ("two competing, contradictory stories of what happened" did not support summary judgment). Moreover, where a conflict exists between the parties' allegations or evidence, "the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Applying the *Whitley* factors to the summary judgment facts, the plaintiff posed no threat to the defendants; further, they could not have reasonably perceived a threat, as he simply exited his cell door to retrieve his lunch. Yet, the defendants sprayed the plaintiff with a chemical agent and beat him. Thus, factors one through four weigh in the plaintiff's favor. As for the final factor, the plaintiff's injuries reveal more than *de minimis* force; medical personnel recorded numerous contusions and abrasions and a bruise that encompassed his entire forehead. The plaintiff also suffered bruises to his right shoulder and arm, as well as a contusion and scratch

---

[3] Binder avers he witnessed the plaintiff's aggressive behavior, as well as Gadson and McLemore's response. (Doc. 23-2).

behind his ear. Moreover, being beaten simply for attempting to retrieve a food tray is "repugnant to the conscience of mankind," regardless of the extent of the plaintiff's injuries. *Hudson*, 503 U.S. at 9-10.

"The 'core judicial inquiry'" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). A reasonable jury could find the defendants used force against the plaintiff out of malice, not good-faith. As such, the defendants are not entitled to qualified immunity. *See Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (internal citation omitted) ("'there is no room for qualified immunity' in . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful"). Accordingly, defendants' motion for summary judgment as to the plaintiff's excessive force claim is due to be denied.

**C. <u>Denial of Medical and Mental Health Care</u>**

To prove an Eighth Amendment violation, "a prisoner must shoulder three burdens." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Hill v. Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). First, the prisoner must

show that he had "an objectively serious medical need." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (citing *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). Second, he "must satisfy the subjective component by showing that the prison official acted with deliberate indifference to h[is] serious medical need." *Goebert*, 510 F.3d at 1326 (citing *Bozemun v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam), *abrogated on other grounds by Kingsley v. Hendrickson*, ___U.S. __, 135 S. Ct. 2466 (2015)). Third, the prisoner must establish "causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citing *Goebert*, 510 F.3d at 1326).

An objectively "serious medical need is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Hill*, 40 F.3d at 1191 (internal quotation omitted), *overruled in part on other grounds by Hope*, 536 U.S. at 739. "In either of these situations, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks omitted, alteration incorporated). However, "the medical need of the prisoner need not be life threatening" to be "serious." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988).

"A plaintiff claiming deliberate indifference to a serious medical need must

prove: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016) (citing *e.g.*, *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

> Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099–1100 (11th Cir. 2014). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).

*Dang v. Sheriff, Seminole Cty., Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017).

"[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). The States Supreme Court has held:

> reviewing courts [can] infer from circumstantial evidence that a prison official had the requisite knowledge. [*Farmer*, 511 U.S.] at 842. Moreover, the Court warned, a prison official may "not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8.

*Comstock*, 273 F.3d at 703. Additionally:

> conduct deliberately indifferent to serious medical needs has included: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all. *Bingham* [*v. Thomas*], 654 F.3d

> [1171] at 1176 [(11th Cir. 2011)]. A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference. *See, e.g.*, *Waldrop v. Evans*, 871 F.2d 1030, 1036 (11th Cir. 1989).

*Melton*, 841 F.3d at 1223.

The undisputed evidence shows none of the defendants deprived or delayed the plaintiff medical or mental health care after the April 15, 2019 incident. Indeed, the plaintiff received immediate medical care. Furthermore, the plaintiff requested and received medical and mental health treatment in the days and months following the April 15, 2019 incident. Because the plaintiff has failed to establish a genuine dispute regarding his claims that the defendants denied or delayed medical treatment following the April 15, 2019 incident, the defendants' motion for summary judgment on these claims is due to be granted.

## V. RECOMMENDATION

For all of the foregoing reasons, the undersigned **RECOMMENDS** the motion for summary judgment be **GRANTED** as to the plaintiff's claims: (1) against the Alabama Department of Corrections; and (2) concerning the denial or delay of medical and mental health care. These claims are due to be **DISMISSED WITH PREJUDICE**. The undersigned **FURTHER RECOMMENDS** the motion for summary judgment be **DENIED** as to the plaintiff's Eighth Amendment excessive

force claims against the correctional officer defendants in their individual capacities; these claims should be **REFERRED** to the undersigned for further proceedings.

## VI. NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made

and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 24th day of August, 2020.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE